UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| BILL SNIDER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:16-CV-149-TLS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Bill Snider, a *pro se* prisoner, filed a Petition for Writ of Habeas Corpus [ECF No. 1] challenging his conviction and 60-year sentence on May 11, 2004, in the St. Joseph County Superior Court under cause number 71D02-0205-FA-0028 for child molestation. The Respondent argues that the Petition must be dismissed because the claims are procedurally defaulted.

**BACKGROUND**

In May 2002, Snider was charged with child molesting. Ultimately, he was convicted by a jury in March 2004. On direct appeal, Snider challenged the sufficiency of the evidence. The Indiana Court of Appeals affirmed his conviction and sentence, and Snider did not seek transfer to the Indiana Supreme Court.

On November 7, 2005, Snider filed a petition for post-conviction relief, which he later amended. On June 23, 2011, Snider filed a Federal Habeas Petition [ECF No. 5-6] in the United States District Court for the Southern District of Indiana, claiming inordinate delay in the state post-conviction proceedings. On February 13, 2014, the state trial court held an evidentiary hearing and issued findings of fact and conclusions of law denying his post-conviction petition.

On September 2, 2014, Snider's Federal Habeas Petition in the Southern District of Indiana was dismissed without prejudice because the post-conviction court ruled on his state post-conviction petition.

Snider appealed the denial of post-conviction relief, but the Indiana Court of Appeals affirmed the post-conviction court. Snider unsuccessfully petitioned the Indiana Court of Appeals for a rehearing. Snider did not seek transfer to the Indiana Supreme Court. On March 14, 2016, Snider filed this Petition, claiming: (1) the evidence was insufficient to convict him; (2) his appellate counsel was ineffective; and (3) there were numerous errors in the post-conviction court's proceedings.

## ANALYSIS

The Respondent argues that Snider's Petition should be dismissed because the claims are procedurally defaulted. "To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (quotation marks and citation omitted).

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.

*Lewis v. Sternes*, 390 F.3d 1019, 1025–1026 (7th Cir. 2004) (quotation marks and citations omitted).

State court records show that Snider did not file a petition to transfer to the Indiana Supreme Court after his direct appeal or after appeal from the denial of his post-conviction proceedings. (*See* Appellate Case History Direct Appeal, ECF No. 5-2; Appellate Case History PCR, ECF No. 5-8.) Because Snider never raised any of his issues to the Indiana Supreme Court his claims are procedurally defaulted.

Nowhere in his Petition or accompanying 50-page Memorandum [ECF No. 1-1] does Snider address or acknowledge his procedural default. In his Traverse [ECF No. 18], Snider presents two arguments to excuse his procedural default. First, Snider argues that he is innocent. Procedural default can be excused "if the petitioner can . . . demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). In order to demonstrate a fundamental miscarriage of justice, the petitioner must prove that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]enable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quotation marks and citation omitted). A petitioner who asserts actual innocence "must demonstrate innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). To do so, he must come forward "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Snider has not provided any new evidence. He merely argues that the evidence presented at trial was insufficient to prove that his victim was under the age of 14. This alone precludes finding that he has demonstrated actual innocence. Moreover, his insufficiency of the evidence argument is meritless because there was ample evidence presented during his trial which demonstrated that his victim was under 14.

> In 2001, Snider was renting a room in J.K.'s three bedroom house in South Bend, Indiana. J.K. also rented out a room to F.L. and F.L.'s minor daughter, B.A., born on July 19, 1989. During that time, J.K. resided with her daughter, M.W., and M.W.'s minor daughter, M.C., born on September 2, 1987. The record shows that M.W. and M.C. moved out of J.K.'s house but would frequently visit. For the times that M.C. was at J.K.'s house for a visit, she would spend time with B.A., and they became friends.
>
> According to M.W., in the spring of 2001, whenever she and M.C. visited J.K. in her Sound (sic) Bend home, she observed B.A. spending a significant amount of time in Snider's room, both with the door open and closed. M.C. would often join B.A. and Snider in the room, but M.W. made sure the door was open at all times. In the summer of 2001, B.A.'s and M.C.'s relationship with Snider became sexual. Snider kissed B.A. and he also began touching her breasts and vagina, both over and under her clothes. Snider also performed oral sex on B.A., and B.A. discovered that Snider was not circumcised. These events partly occurred in Snider's room, and in R.M.'s—Snider's girlfriend—apartment in Mishawaka, Indiana. M.C. was often present when these events occurred. On one afternoon in his room at J.K.'s house, Snider performed oral sex on M.C. in front of B.A. In addition, M.C. performed oral sex on Snider after watching Snider perform oral sex on B.A. M.C. also fondled Snider's penis until he ejaculated. When B.A. left the room, Snider threatened to kill M.C. if she disclosed to anyone what had transpired.
>
> After a 4th of July party at R.M.'s apartment, R.M. observed Snider kiss B.A. and also slap B.A. on her buttocks. R.M. informed Snider that she had seen him, and she reprimanded him for his inappropriate conduct with B.A. Snider responded by stating that it had been ongoing. On another occasion that summer, B.A. and M.C. went to R.M.'s apartment. R.M., at Snider's directive, instructed B.A. and M.C. to put on lingerie. Once the girls were dressed, Snider performed oral sex on B.A. Snider then asked R.M. to perform oral sex on him, which she did. Snider also performed oral sex on M.C. Snider then asked B.A. to have intercourse, but B.A. refused. At some point, M.C. became uncomfortable and she tried calling for a ride home. Both Snider and R.M. seized the phone from M.C. and hid it. M.C. spent the night at R.M.'s apartment.

> In the fall of 2001, B.A. moved to Elkhart, Indiana but soon returned to South Bend and her sexual relationship with Snider resumed. Snider continued to engage in oral sex with B.A. and Snider promised B.A. that he was going to marry her. In April of 2002, B.A. confided in F.L. about being molested by Snider. As a concerned mother, F.L. called M.W. and advised her to talk to M.C. When M.W. questioned M.C., M.C. began crying and said, "I don't want to tell you." (Tr. 481) The following day, M.W. contacted police.

*Snider v. State*, No. 71D02-0511-PC-42, slip op. at *2–4 (Ind. Ct. App. Sept. 15, 2015).

Second, without explanation, he claims that the Court should excuse his procedural default because the issues in his petition "consist of fundamental constitutional errors." (Traverse 2, ECF No. 18.) The simple fact that the issues Snider raises are constitutional in nature does not excuse his procedural default. *See Neder v. United States*, 527 U.S. 1, 8 (1999). Instead, there are two ways a habeas petitioner can overcome a procedural default. As discussed above, a petitioner can do so by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). But the Court has already determined that no such result would exist here. Second, a petitioner can also overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing a constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, Snider does not even attempt to argue cause or prejudice. Because Snider has not offered any meritorious basis for excusing his procedural default his claims cannot be reached on the merits.

## CERTIFICATE OF APPEALABILITY

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant a certificate of appealability. When a court dismisses a petition on

procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id*. at 484. If the petitioner meets that requirement, then he must show that reasonable jurists would find it debatable whether the petition states a valid claim for the denial of a constitutional right. *Id*. As previously explained, all of Snider's claims are procedurally defaulted and there is no reason to encourage him to proceed further. Therefore, he will be denied a certificate of appealability.

## CONCLUSION

For these reasons, the Court **DENIES** habeas corpus relief because the Petition [ECF No. 1] is procedurally defaulted and **DENIES** a certificate of appealability.

SO ORDERED on April 13, 2017.

                                           s/ Theresa L. Springmann
                                           CHIEF JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT